IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT CHENCINSKI, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 12−cv−0817−MJR−SCW |
| MICHAEL REEDER, LT. BERKLEY, TIMOTHY R. QUIGLEY, and MARCUS T. MARVIN | ) |
| Defendants. | ) |

# REPORT & RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

This § 1983 case, in which *pro se* Plaintiff Robert Chencinski has alleged due process violations and acts of retaliation, is before the Court on the Defendants' Motion for Summary Judgment (Doc. 31). The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on whether Chencinski exhausted his administrative remedies before filing suit. For the following reasons, it is **RECOMMENDED** that the Defendants' motion (Doc. 31) be **GRANTED**.

### FACTUAL AND PROCEDURAL BACKGROUND

On July 19, 2012, Robert Chencinski, then an inmate at Pontiac Correctional Center in Illinois, brought the instant suit pursuant to 42 U.S.C. § 1983. Chencinski's allegations stem from several incidents at Shawnee Correctional Center. Specifically, he alleges that Berkley retaliated

1

against him for filing grievances and a civil law suit by removing Plaintiff from a gym porter job and an HVAC position. (Doc. 1). He also alleges Reeder retaliated against him giving false statements to the grievance liaison when the ARB was investigating an incident where Plaintiff claimed that Lt. Riley falsely confiscated legal mail from him on the grounds that it was gang mail. Finally, Plaintiff alleges that he was taken into investigative custody in January 2011 on a pretense of Reeder in retaliation. Plaintiff also made due process and retaliation claims related to a May 2011 disciplinary proceeding, but those claims have been addressed in this Judge's Report and Recommendation at Doc. 44, and are not addressed in this Report.

Defendants filed the instant motion on December 17, 2012. Berkley argues Plaintiff admitted that he never filed any grievances regarding the loss of the HVAC job, and therefore that claim should be dismissed for failure to exhaust administrative remedies. Reeder argues that he was never named in the grievances addressing the confiscation of Plaintiff's mail and therefore, Plaintiff cannot have exhausted his administrative remedies as to Reeder. Finally, Reeder also argues that Plaintiff never filed a grievance based on the alleged false disciplinary investigation in January of 2011, and so, Plaintiff also failed to exhaust his remedies on this point. Defendants therefore ask that any claims based on the above incidents be dismissed without prejudice.

Plaintiff filed a response on January 8, 2013 (Doc. 35), and Defendants filed a reply on January 17, 2013. (Doc. 37). Plaintiff argues that he is excused from grieving the loss of the HVAC position because he feared retaliation at the time. He also argues that he was excused from grieving both Reeder's statement regarding the confiscation of his legal mail and the January 2011 false disciplinary investigation because he did not have enough information to properly grieve them when his time to do so expired. Having thoroughly reviewed the entire record, the undersigned **RECOMMENDS** as follows.

## CHENCINSKI'S GRIEVANCES

2

The parties do not dispute that Plaintiff exhausted his administrative remedies after losing his gym porter job. That claim, against Defendant Berkley, will remain in the case. That is not at issue in this Motion and the undersigned will not address it further. The parties also do not dispute that Plaintiff did not file any grievances related to the loss of his HVAC job.

Plaintiff filed a grievance on December 18, 2009 based on the confiscation of his legal mail against Lt. Riley on November 11, 2009. (Doc. 31-2, p. 4). He received a counselor's response on January 12, 2010, indicating that the mail had been taken to the intelligence unit because it had prohibited security threat group (STG) information. (Doc. 31-2, p. 4). Plaintiff appealed and included an addendum dated January 13, 2010, in which he claimed that Lt. Riley gave his counselor false information and that if there had been an intelligence unit investigation, he would have been interviewed. (Doc. 31-2, p. 5). This response was reviewed by the grievance officer on January 26, 2010; again, the grievance officer stated that the letter had been taken to the intelligence unit. Plaintiff then filed an appeal, and also submitted a letter to the ARB, again implicating Lt. Riley. (Doc. 31-2, p. 9). He received a response on August 31, 2010 denying his grievance and again re-iterating (for the third time) that the letter had been taken per an investigation by Shawnee Correctional Center. (Doc. 31-2, p. 1). The correspondence also indicated that inmate Carev's name had been listed as the return address and that he had been disciplined for the incident. (Doc. 31-2, p. 1). Correspondence from the ARB indicates that Reeder participated in their investigation of Plaintiff's grievance by sending the ARB paperwork related to the investigation and confirming Carev's involvement. (Doc. 31-2, p.2)  No other grievances were submitted in support of Plaintiff's claims of retaliation relating to his legal mail.

Defendants have also alleged that Plaintiff did not grieve his January 2011 confinement in segregation for investigative purposes. Plaintiff has not submitted any evidence to the contrary. Rather, as part of his Complaint, he submitted two grievances regarding the January

3

2011 investigation. One addresses the disposition of his personal property when he was transferred to segregation (Doc. 1-6, p. 1), and the other complains of being billed in segregation for four days after the investigation was over. (Doc. 1-6, p. 3). Neither grievance complains about the initiation of the investigation.

### LEGAL STANDARDS

1.  *Summary Judgment Standard*

Summary judgment — which is governed by FEDERAL RULE OF PROCEDURE 56 — is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. **Dynegy Mktg. & Trade v. Multiut Corp., 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56(a)).**[1] The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits and/or information obtained via discovery—the lack of any genuine issue of material fact. **Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).**

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." **Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). See also Serednyj v. Beverly Healthcare, LLC, 656 F.3d 540, 547 (7th Cir. 2011) ("When a summary judgment motion is submitted and supported by evidence . . . the nonmoving party may not rest on mere allegations or denials in its pleadings")**. A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. **Anderson, 477 U.S. at 248.** A mere scintilla of evidence supporting the non-movant's position is insufficient; a party will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion. **Albiero v. City of Kankakee, 246 F.3d 927, 931–32 (7th Cir. 2001). See also Steen v. Myers,**

---

[1] Though Rule 56 was amended in 2010, the amendment did not change the summary judgment standard. **Sow v. Fortville Police Dept., 636 F.3d 293, 300 (7th Cir. 2011)**.

**486 F.3d 1017, 1022 (7th Cir. 2007) ("[S]ummary judgment is . . . the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.") (internal quotation marks omitted).** In other words, there is "no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." **Van Antwerp v. City of Peoria, 627 F.3d 295, 297 (7th Cir. 2010). Accord Anderson, 477 U.S. at 248 (material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party).**

Finally, the Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter, but rather to determine whether a genuine issue of triable fact exists. **Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co., 528 F.3d 508, 512 (7th Cir. 2008).** The Court considers the facts in a light most favorable to the non-movant — here, Chencinski. **Srail v. Vill. of Lisle, 588 F.3d 940, 948 (7th Cir. 2009).**

### 2. *PLRA's Exhaustion Requirement*

Lawsuits filed by prisoners are governed by 42 U.S.C. § 1997e, the Prison Litigation Reform Act ("PLRA"). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. **42 U.S.C. § 1997e(a).** Failure to satisfy the PLRA's exhaustion requirement is an affirmative defense. **Pavey v. Conley, 544 F.3d 739, 740 (7th Cir. 2008).**

A Motion for Summary Judgment filed pursuant to *Pavey* typically requires a hearing to determine any contested issues regarding exhaustion and a judge may make limited findings of fact at that time. **Pavey v. Conley, 544 F.3d 739, 742 (7th Cir. 2008).** The case may proceed on the merits only after any contested issue of exhaustion is resolved. **Pavey, 544 F.3d at 742.** In *Pavey*,

the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. **Pavey, 544 F.3d at 740-41.** A hearing will not be required where "there are no disputed facts regarding exhaustion, only a legal question." **Doss v. Gilkey, 649 F.Supp.2d 905, 912 (S.D.Ill. 2009).** Here, Plaintiff has not shown that there are disputed factual issues, and therefore the Motion can be resolved as a matter of law.

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. **Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006).** An inmate must take all the steps required by the prison's grievance system to properly exhaust his administrative remedies. **Ford v. Johnson, 362 F.3d 395, 397 (7th Cir. 2004); Pozo v. McCaughtry, 286 F.3d 1022, 1023–24 (7th Cir. 2002).** The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. **Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006).** When officials have been afforded this opportunity, the prisoner has properly exhausted all available remedies. **Id.** But if prison administrators explicitly rely on a procedural shortcoming (like failing to follow the prison's exhaustion deadlines) in rejecting a prisoner's grievance, that procedural shortcoming amounts to a failure to exhaust. **Maddox v. Love, 655 F.3d 709, 722 (7th Cir. 2011).**

The contours of the exhaustion requirement are set by each state's prison grievance system, so the Court looks to Illinois law for the procedures relevant to the instant motion. **See Jones v. Bock, 549 U.S. 199, 218 (2007).**

3. *Exhaustion Requirement under Illinois Law*

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Corrections' Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Admin. Code § 504.800 et seq.** The grievance procedures first require inmates to speak with their

6

Counselor about their complaint. **20 Ill. Admin. Code § 504.810(a)**. If the Counselor does not resolve the issue, the inmate must file a grievance form (directed to the Grievance Officer) within 60 days of the incident. *Id*. The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code § 504.810(b).** If the 60-day deadline has passed, the inmate is still invited to grieve: "[I]f an offender can demonstrate that a grievance was not timely filed for good cause, the grievance shall be considered." **20 Ill. Admin. Code § 504.810(a).**

"The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer," who "shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code § 504.830(d).** "If after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision." **20 Ill. Admin. Code § 504.850(a)**. "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code § 504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code § 504.850(f)**.

CONCLUSIONS OF LAW

The Motion for Partial Summary Judgment raises three issues: 1) whether Plaintiff is excused for failure to grieve the loss of the HVAC job, 2) whether Plaintiff's grievances against Lt. Riley for the confiscation of his legal mail include Reeder by implication and 3) whether Plaintiff is excused from grieving being placed under investigative status in January of 2011.

1. **Loss of HVAC job**

A prisoner will not be found to have exhausted his remedies when he claims that his failure was due to the futility of the grievance system. **Perez v. Wis. Dept. of Corrections, 182 F.3d 533, 537 (7th Cir. 1999).** However, unavailability of the administrative remedy will excuse the exhaustion requirement. **Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006).** A grievance system will be available where a prisoner fails to follow the rules; however, it will be considered unavailable where guards and administrative staff prevent inmates from getting the required paperwork. **Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004).** An administrative remedy will also be unavailable where staff provides incorrect information about the grievance process to a prisoner or fails to respond to grievances at all. **Kaba, 458 F.3d at 684; Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006).** In *Kaba*, the court found that the defendants did not carry their burden on exhaustion of remedies where the prisoner had submitted evidence that he failed to exhaust due to threats, intimidation, and beatings. **Id.** The Seventh Circuit remanded to the district court for a hearing on several questions, including "[a]t what point did the prison officials' misconduct, if there was any, rise to the level so as to prevent a grievance from being filed." **Id.**

Here, no hearing is necessary because Plaintiff has not submitted any evidence that he had a legitimate fear of retaliation after the loss of his second job. Plaintiff submitted no affidavits in support of his Response to the current Motion for Summary Judgment. His Complaint alleges that he did not file a grievance after the loss of the HVAC job because of fear of retaliation, a statement repeated his Response, but Plaintiff has not submitted any facts in support of this

8

conclusory statement. For example, in *Kaba*, the Court found there was a material issue of fact where the plaintiff had submitted three sworn affidavits of his own testimony, a lie-detector test regarding the veracity of the first affidavit, the affidavit of another inmate, and prison documentation from a doctor at another institution about plaintiff's fears regarding the subject correctional center. **Kaba, 458 F.3d at 681.** This evidence was submitted to support plaintiff's allegations that he was repeatedly threatened by a specific guard; it included dates and the substance of the various threats, as well as reports from other inmates that the guard in question was soliciting someone to beat up plaintiff. *Id.* Not only has Plaintiff not submitted any evidence beyond the allegations in his Complaint, he has not alleged specific facts like the Plaintiff in *Kaba* that would make his allegations credible. He not submitted any dates, times, or the substance of any alleged threats he received that would give him reason to fear that he would be retaliated against for filing a grievance. In the absence of such evidence, the Court cannot construe the record in the light most favorable to the Plaintiff because Plaintiff has submitted no facts to the record.

Additionally, the record as it stands substantially contradicts Plaintiff's bare allegation that he feared retaliation. Plaintiff alleges that Berkley removed him from his porter position for filing grievances. Yet Plaintiff filed three grievances as a result of that incident and submitted documentation showing that he had exhausted those grievances as a part of his Complaint. He filed one grievance on September 26, 2010 for the loss of the porter job; another grievance on October 2, 2010 against Berkley for making threats against him; and a third on November 19, 2010 against Berkley for making threats and against his grievance counselor for not properly responding to his earlier grievance. (Doc. 1-5). All three were exhausted finally exhausted in March of 2011. (Doc. 1-5, pp. 4-5). The only concrete act of alleged retaliation throughout this time period was the loss of the second prison job on January 25, 2011 and being sent to segregation on January 26, 2011 for investigative purposes. Plaintiff filed two grievances on February 11, 2011 regarding staff conduct

while in segregation. (Doc. 1-6, pp. 1-4). Therefore, it is clear from the record that Plaintiff was availing himself of the grievance process throughout the 60 day time period he had to grieve the loss of his HVAC job both by filing new grievances and appealing his other grievances up through the administrative process. The grievance process was very much available to him during this time, and Plaintiff is not excused from his failure to exhaust administrative procedures here.

### 2. *January 2011 act of retaliation by placing Plaintiff in segregation*

It is undisputed that Plaintiff never filed a grievance regarding his January 26, 2011 placement in segregation. Plaintiff argues that the investigative detention was never justified. That is not at issue here; the undersigned only addresses the issue of administrative exhaustion. Plaintiff claims that he is excused from exhausting because he did not know Defendant Reeder's intent during his timeframe to file grievances. But Plaintiff clearly knew that Reeder was involved in the investigation which took place while he was in segregation; his grievance related to his release date clearly states that Reeder conducted an investigative interview and then released him from segregation. Plaintiff even requests that the grievance officer interview Reeder to confirm his story. Yet, Plaintiff did not file any grievances against Reeder at this time. He also did not file any grievances related to being placed in segregation generally. The two grievances Plaintiff submitted address issues related to his personal property and the timing of his release from segregation. They do not address the act of putting Plaintiff in segregation, nor do they describe acts that could be attributed to Reeder. Plaintiff's failure to exhaust his administrative remedies as to this claim will preclude him from pursuing it here.

### 3. *Grievances related to the loss of allegedly legal mail in November 2009*

Plaintiff alleges in his complaint that Reeder gave false information to the grievance liaison when they were investigating the confiscation of Plaintiff's legal mail by Lt. Riley. (Doc. 1, p. 9). Specifically he says that Reeder falsely stated that it was a gang letter that came from an inmate

in segregation in order to retaliate against Plaintiff. (Doc. 1, p. 9). Defendants submitted copies of Plaintiff's grievances related to this issue in support of their Motion for Summary Judgment; Plaintiff did not submit any new documents or other evidence to counter. The evidence produced by Defendants shows that Plaintiff's grievance counselor investigated Plaintiff's December 2010 grievance initially by speaking with Lt. Riley, who told him he had confiscated the letter because it contained prohibited STG information. (Doc. 31-2, p. 4). When the grievance officer investigated, his response also indicates that he got his information from Lt. Riley. (Doc. 31-2, p. 3). It does not appear that Defendant Reeder had any involvement in the grievance procedure until June 14, 2010 when he responded via email to Scott Rhine, who was assisting the ARB in investigating the matter. (Doc. 31-2, p. 2). Plaintiff has not submitted any evidence to the contrary, and this June 2010 statement appears to be what the allegation in the complaint refers to. At no time has Plaintiff alleged that Defendant Reeder directed Riley to take his mail or that he took any other action prior to the June 2010 email.

It is clear from the record that even if Reeder gave the ARB false information, this act did not take place until June 14, 2010, nearly seven months after Lt. Riley confiscated Plaintiff's mail. Reeder's communication was therefore a completely separate act, and would need to be grieved separately. It is not part of the conduct described in the grievances against Lt. Riley, and therefore Plaintiff cannot point to those grievances as evidence of exhaustion. His omission is more substantial, and it bars any claims based on Reeder's involvement in the confiscation of the legal mail for failure to exhaust.

## CONCLUSION

For the foregoing reasons, it is respectfully **RECOMMENDED** that Defendants' Motion for Summary Judgment (Doc. 31) be **GRANTED** and the counts described above be **DISMISSED without prejudice**. If this Report is adopted, then the retaliation claim against

11

Defendant Berkley for loss of the HVAC position will be dismissed, as will the claims of retaliation against Defendant Reeder for retaliation related to legal mail and the January 2011 placement in investigative segregation. Plaintiff's due process claims against Defendants Reeder, Berkley, Marvin and Quigley, as well as a separate retaliation claim against Defendant Berkley have been addressed in the Court's April 12, 2013 Report and Recommendation at Doc. 44. If both reports are adopted, the claim against Berkley for retaliation against Plaintiff by taking his gym porter job will remain in the case.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. ***See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004).** <u>**Objections to this Report and Recommendation must be filed on or before June 7, 2013**</u>. *See* FED. R. CIV. P. 6(d); SDIL-LR 5.1(c).

**IT IS SO RECOMMENDED.**
**DATE: May 21, 2013**            */s/ Stephen C. Williams*
                                  **STEPHEN C. WILLIAMS**
                                  United States Magistrate Judge